| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (In Chambers:) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (filed 6/10/11)

The Court finds this motion appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing date of July 11, 2011 is hereby vacated, and the matter is hereby taken under submission.

## I.  INTRODUCTION

On January 18, 2011, plaintiffs B. Aronson Inc., dba A. Aronson Inc. (Aronson), PB&J Consulting Corp., Bruce Aronson and Phebe Aronson filed a complaint against defendants Bradshaw International Inc., ("Bradshaw, Inc."), Douglas J. Bradshaw, Michael Rodrigue ("Rodrigue") and Does 1 to 25 in the instant suit. On March 2, 2011, the parties stipulated to allow plaintiffs to amend their complaint. On March 7, 2011, plaintiffs filed a first amended complaint ("FAC"). On April 25, 2011, the Court granted defendants' motion to dismiss the FAC without prejudice with respect to plaintiffs' second, fourth and sixth claims for intentional interference with prospective economic advantage, fraud, and unfair competition, and with respect to the individual defendants. The Court granted defendants' motion to dismiss with respect to plaintiffs' third claim for "intentional interference with business relationship" with prejudice. On May 25, 2011, plaintiffs filed a second amended complaint ("SAC").

The SAC alleges that plaintiffs and defendants entered into a distribution agreement and a management agreement in 2004, both of which had a term of five years. SAC ¶ 10. "Under the Distribution Agreement, BRADSHAW agreed to exclusively distribute certain kitchenware products for ARONSON as the Licensor." SAC ¶ 11. "Under the Management Agreement, BRADSHAW agreed to engage Plaintiffs BRUCE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

ARONSON and PHEBE ARONSON as managers 'for purposes of managing certain licensing programs, developing new products, generating new licensing opportunities and providing Bradshaw with Aronson's and each Manager's background and licensing experience.'" SAC ¶ 16.  The SAC alleges that beginning in 2008, defendants engaged in various wrongful acts in connection with the arrangement between the parties, including failing to pay under the agreements, and selling defective products in order to "undermin[e]" plaintiffs' relationships with licensors.  SAC ¶¶ 20-28.  Plaintiffs further allege that defendants wrongfully copied plaintiffs' product designs and used them to produce competing products.  SAC ¶¶ 31-32, 37-38, 40, 43-46.  In connection with these allegations, the FAC alleges claims for: (1) breach of contract; (2) intentional interference with prospective economic advantage; (3) interference with business relationship; (4) fraud; (5) misappropriation of trade secrets; and (6) state and commonlaw unfair competition.

On June 10, 2011, defendants filed a motion to dismiss the second and third claims of the SAC.  On June 20, 2011, plaintiffs filed an opposition to the motion.  On June 27, 2011, defendants filed a reply in support of their motion.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  However, a court need not accept as true

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pac. Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pled with particularity. Federal Rule of Civil Procedure 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d 1097, 1103-04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "'sounds in fraud'" where a plaintiff alleges that defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

O

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

engaged in fraudulent conduct and relies on solely on that conduct to prove a claim. Id. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Fed. R. Civ. P.] 9(b)." Id. However, where a plaintiff alleges claims grounded in fraudulent and non fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Fed. R. Civ. P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged." Vess v. Ciba-Geigy Corp. U.S.A., 317 F.3d at 1106 (internal quotation marks and citations omitted). It is not sufficient to merely identify the transaction. Rather "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." Id. (citations omitted).

## III. DISCUSSION

Defendants argue that plaintiffs' second claim for intentional interference with prospective economic advantage should be dismissed because plaintiffs continue to fail to adequately plead that there was a reasonable expectation of future economic benefit from the relationships alleged. Mot. at 1. Specifically, defendants argue that "the mere claim that [plaintiffs] had business relationships with Walmart and General Mills and the subjective belief that they intended that the five-year contract would be temporary break in the relationships is a conclusory allegation that falls short of the reasonable probability element required to state a claim," because the possibility of the continuation of these relationships is too speculative. Id. at 4-5. In fact, defendants contend that "[i]t is not reasonable nor reasonably probable in a competitive business context for ARONSON to have expected to maintain business relationships after a five-year hiatus."[1] Id. at 5.

---

[1] In reply, with respect to plaintiff's intentional interference with economic advantage claim, defendants add that "[i]t is impossible for Plaintiffs to allege an expectation of future economic benefit when their relationship with BRADSHAW ended

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

Defendants further argue that plaintiffs' fraud claim should also be dismissed because plaintiffs have still not pleaded it with sufficient particularity. Id. at 1. Defendants assert that plaintiffs' fraud claim fails to specifically allege the "time, place, and specific content of the false representation." Id. at 6, citing Edwards v. Marin Park, Inc., 356 F. 3d 1058, 1066 (9th Cir. 2004). "Though Plaintiffs have added volume to their claim, the additions do not add the requisite details. For example, rather than specifying the content and dates of alleged emails stating alleged misrepresentation confirming a deal between ARONSON and BRADSHAW, Plaintiffs have now deleted reference to these specific emails and substituted a more vague reference to general stalling by BRADSHAW over the supposed deal." Mot. at 6-7. Further, defendants argue, "[p]laintiffs only say that communication occurred 'in May or June 2009' and do not describe a method of communication. . . . Plaintiffs also continue to offer allegations on information and belief without providing explanation how they arrived at these beliefs." Id. at 7. As a result of plaintiffs' vague allegations, defendants contend that it is not clear what the purported misrepresentation was. Id. "All of these vague allegations beg the question whether the alleged misrepresentation was about the intent to consummate a deal or the exact terms of the alleged 'handshake deal' or something else." Id. at 8. Moreover, defendants argue plaintiffs make only a bare allegation of reliance on the alleged misrepresentation and "make little attempt to describe their alleged reliance as justified or reasonable." Id. at 9. Further, defendants argue, plaintiffs' alleged delay in "exercising other options" is implausible as "ARONSON had an alternate deal in place and effective the day after its business ended with BRADSHAW." Id.

---

on one day and the sale of their company occurred the next day." Reply at 3. In support of this argument, defendants cite section 1.02(o) of plaintiffs' asset purchase agreement with Evriholder Products, LLC, an excerpt of which was submitted by plaintiffs, and the entirety of which is attached as Exhibit A to defendants' reply which "states that Plaintiffs retained rights to legal claims against BRADSHAW if they accrued prior to the Closing of the asset purchase. . . . Setting this date forestalls Plaintiffs' claims because there was no time period when any expectation of future economic benefit could exist. Any future economic benefit after that would belong to the future owner." Id. Therefore, defendants argue, plaintiffs do not have standing to bring their claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

To the extent that the claim is alleged against Rodrigue in his personal capacity, defendants argue that it should be dismissed because there is no basis on which to hold him personally liable. Id. at 1-2. Defendants contend that Rodrigue is only referred to in plaintiffs' allegations as a "conduit to transmit BRADSHAW's business position and conduct corporate business." Id. at 10. Moreover, defendants argue, the SAC "deletes Mr. Rodrigue from the section describing the parties to the law suit." Id.

In opposition, plaintiffs argue that they sufficiently allege ongoing relationships with Walmart and General Mills, and a reasonable probability that those relationships would continue. Opp. at 4-6, citing SAC at ¶¶ 96-106. Plaintiffs argue that they sufficiently allege that "[t]he basis for Plaintiffs['] belief that this relationship would continue, and Walmart would continue to sell products made by Plaintiffs, is Walmart's long-term relationship with Plaintiffs, and its desire for stability in its product lines. This is supported by Plaintiffs['] allegation that the reason Walmart stopped purchasing their products is because Bradshaw offered identical products at a lower price (which they were able to do because of their wrongful conduct). . . . Plaintiffs also allege General Mills' intent to continue its business relationship with Plaintiffs, and the reason for the disruption was Bradshaw's wrongful conduct." Id. at 6.

With respect to their fraud claim, plaintiffs argue that their allegations are sufficiently particular. Id. at 8, citing SAC ¶¶ 124-128. "While the exact dates are not alleged, the general time frame is noted. Further, the date of the meeting referred to [in paragraph 126 of the SAC] is well within the knowledge of Defendants. The misrepresentations made by Rodrigue, on behalf of himself and Bradshaw, are alleged in Paragraphs 124, 125, and 126. While Defendants' contend that the terms of the 'handshake deal' . . . are 'unspecified in the SAC,' the important term, that 'BRADSHAW would purchase ARONSON's assets for a $1.8 million buy-out,' is directly stated. It is this promise that Plaintiffs contend was a misrepresentation on the part of Rodrigue and Bradshaw." Id. at 9. With respect to the element of reliance, plaintiffs argue that they sufficiently allege that in reliance on defendants' alleged misrepresentations, they: "(1) wait[ed] for months while Bradshaw was allegedly putting the handshake deal in writing, rather thank looking for another buyer and (2) [took] responsibility for the General Mills defect claims, rather than placing the blame where it belonged –Bradshaw. . . . Plaintiffs['] reliance was reasonable under the circumstances because [they] had what [they] thought was a good business relationship with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

Defendants, and they had no reason to think Defendants were misappropriating trade secrets and confidential information, and using those to steal Plaintiff's customers." Id. at 10, citing SAC ¶¶ 132-134, 136-137.

With respect to defendant Rodrigue, plaintiffs argue that he can be held personally liable under California law, which they contend "holds that officers, directors, or employees who participate in wrongful conduct, like fraud, can be held liable for that conduct along with the corporation." Id. at 11.[2]

With respect to plaintiffs' second claim for intentional interference with prospective economic advantage, the Court concludes that plaintiffs have sufficiently pleaded a reasonable expectation of future economic benefit. Plaintiffs allege that they maintained relationships with Walmart and General Mills, and that the parties all intended to resume their direct engagements following the term of the agreements between plaintiffs and defendants. See Compl. ¶¶ 97, 98, 100, 101, 102. Defendants' argument that a continuation of the business relationships at issue was unlikely may be more appropriately addressed on a more complete factual record. With respect to defendants' arguments regarding plaintiff's standing to bring this claim, the Court finds that the claim may have accrued prior to the closing of the asset purchase agreement, on the theory that the alleged interference may have affected the sales price of the assets. Therefore, the Court DENIES defendants' motion with respect to plaintiffs' second claim.

With respect to plaintiffs' third claim, the Court concludes that plaintiffs have adequately pleaded that defendants fraudulently expressed an intent to enter into an agreement to buy the assets at issue and to compensate plaintiffs for "costs associated with General Mills' ongoing defective products claims," and that plaintiffs reasonably

---

[2] In reply, defendants argue that plaintiffs misstate the applicable rule, and that the correct rule is that "[i]n California, liability of officers and agents of a corporation are generally limited to cases of personal injury and not to economic losses. . . . Alternatively, outside of physical injuries, individual liability is limited to circumstances where the officer had a duty to the third party claiming tortious injury or acted for their own personal benefit or advantage in the transaction." Reply at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-531 CAS (SSx) | Date | July 7, 2011 |
|---|---|---|---|
| Title | B. ARONSON, INC., DBA A. ARONSON, INC.; ET AL. v. BRADSHAW INTERNATIONAL, INC.; ET AL. | | |

relied on those assertions. Moreover, plaintiffs have sufficiently alleged when these representations were made and by whom. See Compl. at ¶¶ 122-126, 129, 133, 136-137. The Court further concludes that plaintiffs allege a legally viable claim against defendant Rodrigue in his individual capacity, as they allege that Rodrigue made affirmatively fraudulent statements to plaintiffs in the course of the negotiations at issue. See Compl. ¶¶ 57, 58, 65, 130; Jacobs v. Freeman, 104 Cal. App. 3d 177 ("an agent who knowingly participates in a fraudulent transaction is equally responsible with his principal").

## IV. CONCLUSION

In light of the foregoing, the Court DENIES defendants' motion to dismiss the second and third claims in plaintiffs' SAC.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |